UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------x
VERONICA MURRELL
    Plaintiff,

    v.                                  Docket No. 09-CV-40090


CVS CAREMARK,
    Defendant.
---------------------------------------------x

## AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

### INTRODUCTION

1. Plaintiff Veronica Murrell brings this action for equitable relief and compensatory and punitive damages against defendant CVS Caremark under M.G.L. c. 151B and Title VII when it retaliated against Ms. Murrell for complaining that she was discriminated against on account of her race by changing the terms and conditions of her employment, creating a hostile environment and constructively terminating her.

2. The defendant wrongfully refused to engage in good faith in an interactive process with Plaintiff regarding her request for reasonable accommodations in the terms and conditions of her employment, failed to provide her with reasonable accommodations in the terms and conditions of his employment due to his disability, and wrongfully discharged her from employment with the defendant based on his membership in a protected class in violation of the Americans with Disabilities Act.

3. The defendant wrongfully refused to engage in good faith in an interactive process with Plaintiff regarding her request for reasonable accommodations in the terms and conditions of her employment, failed to provide her with reasonable accommodations in the terms and conditions of his employment due to his disability, and wrongfully discharged her from employment with the defendant based on his membership in a protected class in violation of the Americans with Disabilities Act and M.G.L. c. 151B.

4. Plaintiff seeks declaratory and equitable relief designed to assure that the defendant discontinues its illegal practices.

5. Plaintiff also seeks compensation for the grave harm she suffered as a result of the illegal actions and omissions of the defendant.

## JURISDICTION and VENUE

6. This suit is brought and jurisdiction lies pursuant to Title VII, 42 U.S.C. § 2000e, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as well as 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 28 U.S.C. §§ 2201 and 2202.

7. All conditions precedent to jurisdiction under M.G.L. c. 151B and Tile VII have occurred or been complied with:

    a. A charge of discrimination on the basis of Ms. Murrell's disability and alleging retaliation was timely filed with the Massachusetts Commission Against Discrimination ("MCAD") within 300 days of the discriminatory action alleged in the charge.

      b.    A request for dismissal and notification of rights was granted by the MCAD and this complaint is filed within 3 years of the discriminatory acts claimed in the MCAD charge.

      c.    The Equal Employment Opportunity Commission ("EEOC") granted Ms. Murrell a Right to Sue within 90 days of the filing of this charge.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) insofar as all the discriminatory employment practices alleged in this complaint were committed within the County of Worcester in the Commonwealth of Massachusetts, the plaintiff resides in the County of Worcester in the Commonwealth of Massachusetts and each of the defendants conduct or conducted business and have substantial business contacts in the Commonwealth of Massachusetts.

## PARTIES

9.    The plaintiff, Veronica Murrell, is a qualified disabled, African American woman who resides in Worcester, Massachusetts.

10.    The defendant, CVS Caremark is a public company with a place of business in Worcester, Massachusetts and a principal place of business in Woonsocket, Rhode Island.

11.    CVS Caremark is an "employer" within the meaning of M.G.L. c. 151B, § 1.

12.    CVS Caremark is an employer for purposes of 42 U.S.C. § 12111.

13. CVS Caremark is a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

14. CVS Caremark. is engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

**FACTS**

15. The plaintiff began her employment with CVS on or around February 2003 as a Pharmacy Technician.

16. Ms. Murrell was a good employee and is the only African American employee that she was aware of in her locations and under the same supervision as she.

17. In or around June 2006, Ms. Murrell changed CVS locations from Store 191 on May Street in Worcester to Store 630 on Plantation Street in Worcester and Alan Pajak became her supervisor. He was never her supervisor before.

18. In August 2007, the Lead Pharmacy Technician at Ms. Murrell's CVS location left the company.

19. In mid-September 2007, Ms. Murrell learned by hearing Mr. Pajak telling another employee about an opening for a position, a Night Lead Pharmacy Technician.

20. The following day, Ms. Murrell went to Mr. Pajak and told him that she was interested in the position, at which time he informed her that the position was being dissolved.

21. In the same conversation, Mr. Pajak encouraged her to change her shift and become a Night Technician, intimating that if she did so she would be better situated to become the Night Lead Pharmacy Technician, if that position ever became available again. Ms. Murrell changed her shift for this reason at that time.

22. In mid-September 2007, Ms. Murrell leaned that Mr. Pajak and Vaughn Kinosian hired Kim Pulsifer, a Caucasian woman, for the Night Lead Pharmacy Technician position that he had said was dissolved.

23. Ms. Murrell learned this when she saw corporate trainer Julie Sargentelli working with Ms. Pulsifer and so she asked Ms. Pulsifer about the position.

24. Ms. Pulsifer told Ms. Murrell that she was the new Night Lead Pharmacy Technician and that she only took the job because they offered her a pay increase.

25. Contrary to policy, CVS had not posted the position on its website prior to hiring.

26. Upon learning of the hire, Ms. Murrell asked Mr. Pajak why, after she expressed her interest, she was not considered for the position.

27. In response Mr. Pajak denied knowledge of Ms. Murrell's interest and told her that even if he had interviewed her, he would not have hired her, he would have hired Ms. Pulsifer.

28. Ms. Murrell was qualified for the for the Night Lead Pharmacy Technician position. In the year after Ms. Pulsifer was the Night Lead Pharmacy

Technician, she would leave by 6 p.m. on numerous occasions and Ms. Murrell would perform many of the job duties of Lead Technician.

29. For a number of reasons including that CVS lied about the availability of the position, failed to follow its own policy for promotions, failed to interview or consider her for the position of Lead Night Technician, hired a Caucasian despite Ms. Murrell being qualified for the position, Ms. Murrell reasonably believed that she was not promoted due to race discrimination.

30. At that time in September 2007, Ms. Murrell contacted Human Resources attempting to speak with Laurie Demellion, her Human Resources representative. Ms. Demillion was out of the office and Ms. Murrell was put in contact with Kim Kozzack. Ms. Murrell told Ms. Kozzack that she was denied the promotion on account of race discrimination.

31. To her knowledge, at the time she made this complaint to Human Resources, CVS did not investigate Ms. Murrell's allegations of discrimination and did not call her again regarding her allegations of discrimination, nor was any follow up done by Ms. Demillion or any other Human Resources representative of the company.

32. On September 25, 2007, Mr. Pajak published a memorandum dated September 20, 2007, to the staff stating that Mr. Kinosian was conducting interviews for the Lead Night Technician position.

33. The position was again not posted on CVS's website as it should have been consistent with policy.

34. Mr. Kinosian later approached Ms. Murrell that day while she was working and told her that he was going to interview her at that time. She had no prior notice or any idea that he was going to do so. Ms. Murrell told him that she was not prepared for an interview and wanted to do so to which he replied "now is the time."

35. During that same time frame, Ms. Pulsifer continued to train for and work in the job of Lead Night Technician.

36. Mr. Kinosian called her October 10, 2007, and informed her that she did not receive the promotion.

37. In or around December 2007, Ms. Murrell requested a reasonable accommodation of Mr. Pajak for her sickle cell anemia specifically that she be allowed to eat between break times. This was denied, even though other employees, without any medical condition, typically eat between break times.

38. After she was formally told that she did not get the position of Night Lead Pharmacy Technician, Ms. Murrell requested of Mr. Pajak a transfer back to the day shift when the next position became available.

39. His response to her was that he "would rather fire you that put you back to the day shift." He also indicated that he was not switching anyone else's schedule.

40. When Ms. Murrell was denied a transfer back to day shift, similarly situated employees who did not complain of discrimination, or who are not disabled were switching schedules from night to day shift and transferring scheduled from night to day shift.

41. At or around the same time Mr. Pajak instructed Ms. Murrell's immediate supervisor to track Ms. Murrell's breaks while other similarly situated employees who did not complain of discrimination, or who are not disabled did not have their breaks tracked.

42. Ms. Murrell is the only employee who must report when she leaves and returns from breaks, contrary to procedure and contrary to the treatment of other similarly situated employees who did not complain of discrimination, or who are not disabled.

43. Ms. Murrell was forced to sign a contract with her employer that enumerated more stringent requirements of her than other similarly situated employees who did not complain of discrimination, or who are not disabled. In late 2007 and early 2008, Mr. Pajak would call Ms. Murrell to the office to reprimand her multiple times each week.

44. In or around March 30, 2008, for the first time during her tenure, Ms. Murrell received a Needs Improvement and negative yearly review. The multiple weekly reprimands continued after this time.

45. On account of this and other harsh treatment and the stress it has caused Ms. Murrell first asked that she be transferred from Mr. Pajak's supervision, then decreased her weekly hours, and, as of November 1, 2008, went out on leave for her emotional distress, be and has been unable to return to work, effectively being terminated as a result.

## COUNT I

### (VIOLATION OF M.G.L. c. 151B – DISCRIMINATION ON ACCOUNT OF DISABILITY )

46. Plaintiff repeats the allegations set forth in paragraphs 1 through 37 above, and incorporates those allegations as if fully set forth herein.

The actions and omissions of the defendants constitute unlawful discrimination against Plaintiff on the basis of his qualifying disability, in violation of M.G.L. c. 151B, § 4.

47. The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Plaintiff to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

## COUNT II

### (VIOLATION OF M.G.L. c. 151B – – DISCRIMINATION ON ACCOUNT OF DISABILITY FAILURE TO REASONABLY ACCOMODATE)

48. Plaintiff repeats the allegations set forth in paragraphs 1 through 39 above, and incorporates those allegations as if fully set forth herein.

49. The actions and omissions of the defendants, including their failure to reasonably accommodate her disability, constitute unlawful discrimination against Plaintiff on the basis of his disability, in violation of M.G.L. c. 151b, § 4.

50. The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Plaintiff to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary

losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

## COUNT III

### (VIOLATION OF 42 U.S.C. § 12101 ET SEQ. – DISCRIMINATION ON ACCOUNT OF DISABILITY )

51. Plaintiff repeats the allegations set forth in paragraphs 1 through 42 above, and incorporates those allegations as if fully set forth herein.

The actions and omissions of the defendants constitute unlawful discrimination against Plaintiff on the basis of her qualifying disability, in violation of 42 U.S.C. § 12101 *et seq.*

52. The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Plaintiff to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

## COUNT IV

### (VIOLATION OF 42 U.S.C. § 12101 ET SEQ. – DISCRIMINATION ON ACCOUNT OF DISABILITY FAILURE TO REASONABLY ACCOMODATE)

53. Plaintiff repeats the allegations set forth in paragraphs 1 through 44 above, and incorporates those allegations as if fully set forth herein.

54. The actions and omissions of the defendants, including their failure to reasonably accommodate her disability, constitute unlawful discrimination against Plaintiff on the basis of her qualifying disability, in violation of 42 U.S.C. § 12101 *et seq.*

55. The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Plaintiff to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

## COUNT V

### (VIOLATION OF M.G.L. c. 151B – RETALIATION ON ACCOUNT OF COMPLAINTS OF RACE DISCRIMINATION)

56. Plaintiff repeats the allegations set forth in paragraphs 1 through 47 above, and incorporates those allegations as if fully set forth herein.

57. The actions and omissions of the defendants constitute unlawful discrimination against Plaintiff on the basis of her race, in violation of M.G.L. c. 151b, § 1.

58. The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Plaintiff to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

## COUNT VI

### (VIOLATION OF 42 U.S.C. § 2000E--RETALIATION ON ACCOUNT OF COMPLAINTS OF RACE DISCRIMINATION)

59. Plaintiff repeats the allegations set forth in paragraphs 1 through 50 above, and incorporates those allegations as if fully set forth herein.

60. The actions and omissions of the defendants constitute unlawful discrimination against Plaintiff on the basis of his race, in violation of 42 U.S.C. 2000e.

61. The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Plaintiff to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.
.

## PRAYER FOR RELIEF

Plaintiff prays the Court to grant the following relief:

1. That the plaintiff be awarded appropriate injunctive relief designed to ensure that the defendant discontinue its illegal practices.

2. That the plaintiff be awarded compensatory damages in an amount to be determined at trial in this matter, plus appropriate interest on any such award.

3. That the plaintiff be awarded punitive damages in an amount to be determined at trial in this matter.

4. That the plaintiff be awarded reasonable attorney's fees, together with litigation expenses and costs of suit.

5. That the plaintiff be awarded such other relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

THE PLAINTIFF SEEKS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

                                            PLAINTIFF VERONICA MURRELL
                                            By:


                                         /s/ Suzanne Garrow
                                         Her attorney
                                         Suzanne Garrow BBO# 636548
                                         Heisler, Feldman, McCormick,
                                             & Garrow, PC
                                         1145 Main Street, Ste. 508
                                         Springfield, MA  01103
                                         sgarrow@hfmgpc.com
                                         Phone (413) 788-7988

Dated:  August 5, 2009